

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEMPO NETWORKS, LLC<br><br>Plaintiff,<br><br>v.<br><br>CABLE & WIRELESS JAMAICA LIMITED<br><br>Defendant. | COMPLAINT<br><br>(JURY TRIAL DEMANDED)<br><br>Case No. 08 CV 2422 |

Plaintiff Tempo Networks, LLC ("Tempo"), by and through its undersigned counsel, for its Complaint against Defendant Cable & Wireless Jamaica Limited ("Cable & Wireless"), alleges as follows:

## NATURE OF THE CASE

1.  Tempo is a television and online network, dedicated to Caribbean music, entertainment, and culture. This action arises from Cable & Wireless's complete repudiation of its contractual obligations to Tempo in connection with an exclusive license agreement, whereby Cable & Wireless obtained valuable rights to advertise, market and promote its products and services on Tempo, to integrate into Tempo's off-channel activities and to provide its customers with access to Tempo-brand wireless content, including mobile ring tones, wallpaper, and mobile games.

2.  Although the original contracting parties were Cable & Wireless, on the one hand, and MTV Networks ("MTVN"), on the other hand, Cable & Wireless has acknowledged MTVN's valid assignment of all of its rights and obligations under the license agreement to its affiliate, Tempo. After Tempo underwent a change of ownership, which did not result in an assignment or transfer of the license agreement, Cable & Wireless abruptly reneged on the

agreement, despite Tempo's continued performance thereunder. As a result of Cable & Wireless's breach of its obligations, Tempo has suffered damages in excess of $6.5 million.

## PARTIES

3. Plaintiff Tempo Networks, LLC is a foreign limited liability company, formed in the state of Delaware, doing business in the state of New York, with its principal place of business in Newark, New Jersey.

4. Tempo is informed and believes that defendant Cable & Wireless Jamaica Limited is a company incorporated under the laws of Jamaica, with its principal place of business in Kingston, Jamaica.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this district under 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to the claim occurred in this district, and Defendant is subject to personal jurisdiction in this district. Further, both parties have consented and agreed to submit to the exclusive jurisdiction of the courts of New York State and the federal courts of the Southern District of New York, and have consented and agreed to the exercise of personal jurisdiction over the parties by such courts, for disputes arising out of the agreement here at issue.

## FACTUAL BACKGROUND

7. In mid-2005, MTVN, a division of Viacom International Inc., announced the launch of a new television network, dedicated to Caribbean music, entertainment, and culture.

The idea for this new network, called "Tempo," was conceived by Frederick A. Morton, Jr. ("Morton"), who at that time served as Deputy General Counsel of Business and Legal Affairs for MTVN before founding and becoming the General Manager of Tempo.

8. On or about February 14, 2006, defendant Cable & Wireless, a Jamaican telecommunications company, entered into a three-year Joint Promotion, Sponsorship and Content License, Distribution and Marketing Agreement (the "Agreement") with MTVN for the rights to advertise, market and promote Cable & Wireless's products and services on Tempo, to integrate into Tempo's off-channel activities and to provide its customers with access to exclusive Tempo-brand wireless content, including mobile ring tones, wallpaper, and mobile games.

9. In exchange for the aforementioned valuable rights, Cable & Wireless agreed to purchase television and online advertising on the Tempo network, and to sponsor certain on-air and off-air Tempo events (the "Sponsorship Commitment"). To satisfy its Sponsorship Commitment, Cable & Wireless was required to spend at least $7 million purchasing advertising and sponsoring events over the three-year term of the Agreement (at least $1 million during the first year, at least $2 million during the second year, and at least $4 million during the third year). In addition, Cable & Wireless was required to pay two types of "content royalties" on purchases of wireless content by its subscribers: (1) a 50% royalty for each purchase of certain contractually-specified categories of Tempo-brand wireless content; and (2) a 15% royalty for each purchase of Cable & Wireless-provided content. Cable & Wireless also was contractually obligated to make additional payments, termed "Category Exclusivity" payments, in the amount of $800,000 over the three-year term of the Agreement – $270,000 in the first year, $270,000 in the second year, and $260,000 in the third year.

10. Pursuant to the express terms of the Agreement, MTVN was authorized to assign, without prior consent from Cable & Wireless, any and all of its rights and obligations under the Agreement to any MTVN-affiliated entity, including, but not limited to, "any successor entity(ies) resulting from a merger, acquisition, or consolidation, reorganization, spin-off, divestiture or otherwise."

11. In conformity with the Agreement, MTVN validly assigned all of its rights and obligations under the Agreement to plaintiff Tempo, which was an MTVN affiliate under the Agreement at the time of that assignment. Cable & Wireless has acknowledged and agreed that the assignment from MTVN to Tempo was valid and permissible under the terms of the Agreement.

12. Subsequent to the assignment from MTVN to Tempo, as referenced in the preceding paragraph 11, an investor group led by Morton (the "Morton Group") purchased all of the ownership interests in Tempo from MTVN. To date, Tempo has remained exactly the same company as before the purchase of its ownership interests by the Morton Group, and the Tempo network has remained the exact same business it was before the assignment of the Agreement from MTVN to Tempo. The nature of Tempo's business – providing television and Internet platforms for the promotion of Caribbean music, entertainment and culture – has not changed, and it utilizes the same name, branding, logo and business identity that it used prior to the assignment from MTVN to Tempo and prior to the acquisition of ownership of Tempo by the Morton Group. Tempo also maintains the same company policies and continues to employ the same personnel to run the company's day-to-day operations. In fact, both MTVN and the Morton Group specifically assured Cable & Wireless that, as before the acquisition of ownership of Tempo by the Morton Group, Morton was (and is) personally "continuing to run the Tempo

4

business," and that Cable & Wireless would "continue to deal with the same Tempo business and personnel as it did before the acquisition."

13. Nevertheless, on or about January 25, 2008, Cable & Wireless sent to MTVN and Tempo a "Notice of Termination," falsely claiming that Cable & Wireless had the right to terminate the Agreement based upon so-called "material breaches" by MTVN. Among other reasons, Cable & Wireless erroneously claimed that MTVN breached the Agreement when control of Tempo changed from MTVN to the Morton Group without Cable & Wireless's prior consent. On that basis, Cable & Wireless purported to "terminate" the Agreement and reneged on its obligations thereunder.

14. However, there is no provision in the Agreement that permits Cable & Wireless to terminate the Agreement because of a change of ownership of MTVN or its assignees(s). In fact, the language of the Agreement makes it clear that the contracting parties did not intend for Cable & Wireless to have such a unilateral right of termination if MTVN or its assignees underwent a change of ownership. While the parties specifically included a provision that allows MTVN a right of termination "in the event [Cable & Wireless] undergoes a change in control," they chose not to include reciprocal language giving Cable & Wireless a similar right of termination.

## DEMAND FOR COMPLIANCE

15. Notwithstanding Tempo's demands that Cable & Wireless honor its obligations under the Agreement, Cable & Wireless has failed and refused to pay amounts due and owing to Tempo under the terms of the Agreement and has repudiated all of its ongoing obligations under the Agreement. On or about January 31, 2008, more than thirty (30) days before filing this complaint, Tempo demanded that Cable & Wireless withdraw the Notice of Termination and provide written confirmation of its intent to honor the Agreement by no later than February 7,

2008. Cable & Wireless has failed and refused to do so. As of the date of this Complaint, Cable & Wireless stands in material breach of the Agreement and owes Tempo over $6.5 million in combined Sponsorship Commitment and content royalty payments thereunder.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

16.  Tempo incorporates by reference the allegations contained in paragraphs 1 through 15 above, as though set forth fully herein.

17.  Tempo and Cable & Wireless have a valid Agreement, which obligates Cable & Wireless to pay Tempo at least $7 million in Sponsorship Commitment payments as well as additional content royalty payments for the rights to advertise, market and promote its products and services on Tempo, to integrate into Tempo's off-channel activities and to provide its customers with access to exclusive Tempo-brand wireless content, including mobile ring tones, wallpaper, and mobile games.

18.  MTVN was authorized to assign, without prior consent from Cable & Wireless, any and/or all of its rights and obligations under the Agreement to any MTVN affiliated entity, including "any successor entity(ies) resulting from a merger, acquisition, or consolidation, reorganization, spin-off, divestiture or otherwise."

19.  Cable & Wireless did not have the right to prevent, approve or disapprove a transfer of control of Tempo from MTVN to any entity or persons, including the Morton Group.

20.  Cable & Wireless has materially breached the Agreement by its failure to make millions of dollars of contractually-obligated payments and by its repudiation of its continuing obligations thereunder. Cable & Wireless explicitly disavowed the Agreement after Tempo had substantially performed thereunder.

21. At the time Tempo learned of Cable & Wireless's repudiation of the Agreement, Tempo had performed all of the conditions and obligations on its part to be done and performed, and was ready, willing and able to perform those terms and conditions necessary to complete performance on its part, except as expressly or impliedly excused, waived or rendered impossible by Cable & Wireless.

22. As a direct and proximate result of Cable & Wireless's breach of its contractual obligations and its repudiation of its continuing obligations, Tempo has suffered and will suffer damages in excess of $6.5 million. Although Tempo has attempted and continues to attempt in good faith to mitigate the damages caused by Cable & Wireless's breach of contract, Tempo's efforts have not resulted in the mitigation of the damages caused by Cable & Wireless's breach and repudiation. Tempo continues to suffer damages of at least several million dollars, the exact amount of which will be determined according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Tempo Networks, LLC prays for relief against defendant Cable & Wireless Jamaica Limited as set forth below.

   a. For compensatory damages in an amount to be proven at trial, but in the minimum amount of $6.54 million.

   b. For pre-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity.

   c. For costs incurred in this action, including reasonable attorney's fees, to the extent permitted by the Agreement, and by law or equity.

   d. For such other and further relief as the Court may deem just and proper.

DATED: March 10, 2008
New York, New York

                        Respectfully Submitted,

                        HELLER EHRMAN LLP

By: _____
     Richard S. Goldstein (RG 9560)
     richard.goldstein@hellerehrman.com
     Andrew Levine (AL 3552)
     andrew.levine@hellerehrman.com
     Heller Ehrman LLP
     Times Square Tower
     7 Times Square
     New York, NY 10036-6524
     Telephone: (212) 832-8300
     Facsimile: (212) 763-7600

*Of Counsel:*

Andrew M. White (CA STATE BAR NO. 60181)
awhite@whiteo.com
David E. Fink (CA STATE BAR NO. 169212)
dfink@whiteo.com
Erin H. Fox (CA STATE BAR NO. 245633)
efox@whiteo.com

White O'Connor Curry LLP
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199

*Attorneys for plaintiff Tempo Networks, LLC*